JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Shana Albright

**(b)** County of Residence of First Listed Plaintiff: Wyncote
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Olugbenga Abiona, 215-833-8227; 121 South Broad Street, Suite 1200, Philadelphia, PA 19107

**DEFENDANTS**

SEPTA, Lt. Andrew Lachowicz, Marc Pasquarella, Roger Walls and William Saunders

County of Residence of First Listed Defendant: Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII of the Civil Rights Act; ADA

Brief description of cause:
Retaliatory actions subsequent to protected activities

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY *(See instructions)*:

JUDGE ____ DOCKET NUMBER ____

DATE: August 24, 2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

10/2024

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

Place of Accident, Incident, or

Transaction:_____Philadelphia________________________________

***RELATED CASE IF ANY:*** Case Number:____________ Judge:______________

1. Does this case involve property included in an earlier numbered suit? Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. X Employment
☐ 9. Labor-Management Relations
☐ 10. X Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief ***see certification below***
☐ 16. All Other Federal Question Cases. *(Please specify)*:____________________

**B.** ***Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury (*Please specify*):______________
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*______________

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ XX Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| -------------------------------- | | |
| | : | CIVIL ACTION No. |
| SHANA ALBRIGHT | : | |
| Plaintiff, | : | |
| vs. | : | |
| | : | |
| SEPTA | : | |
| LT. ANDREW LACHOWICZ | : | |
| CAPT. MARC PASQUARELLA | : | |
| CAPT. ROGER WALLS | : | |
| CAPT. WILLIAM SAUNDERS | : | |
| Defendants | : | |

## COMPLAINT AND JURY DEMAND

### I. INTRODUCTION

1. Plaintiff in the above captioned matter, claims a sum in excess of One Hundred Thousand Dollars ($100,000.00) in damages and upon her causes of action, avers as follows:

2. This action for monetary damages and other appropriate relief is brought by Plaintiff to redress violations by Defendants Southeastern Pennsylvania Transportation Authority (hereinafter “SEPTA”), Lt. Andrew Lachowicz, Captain Marc Pasquarella, Capt. William Saunders and Capt. Roger Walls, rights secured to Plaintiff by the laws of the United States of America and the Commonwealth of Pennsylvania.

3. This action arises under Title VII of the Civil Rights Act 42 U.S.C. 2000e-5, et seq., which prohibit discrimination on the bases of race, gender and retaliation by employers and any person because of complaints of race and/or gender discrimination, and is brought by Plaintiff to redress arbitrary, malicious, reckless, improper, unlawful, willful, and deliberate discrimination and retaliation by Defendants.

4. This action also arises under the PHRA which prohibits discrimination on the bases of race, gender and retaliation by employers and any person because of complaints of race and/or gender discrimination, and is brought by Plaintiff to redress arbitrary, malicious, reckless, improper, unlawful, willful and deliberate discrimination and retaliation by Defendants.

5. This action also arises under the Americans with Disability Act (ADA) for the violation of Plaintiff's rights by Defendants for denying her accommodations because of her disabilities and subjecting her to retaliatory actions because she engaged in protected activities under the ADA.

6. On July 22, 2026, the EEOC terminated its investigation of Plaintiff's charge dually filed with the EEOC and PHRC and issued Plaintiff a right to sue notice permitting Plaintiff to take her Title VII, ADA and PHRA claims against Defendants to Court.  A copy is attached hereto.

## II. JURISDICTION, VENUE AND PARTIES

7. The jurisdiction of this Court is invoked pursuant to Title 28 U.S.C. 1331, which provides for the original jurisdiction of Plaintiff's claims arising under the laws of the United States of America. This Court also has supplemental jurisdiction over Plaintiff's state law claims.

8. The venue of this Court is proper pursuant to the dictates of Title 28 U.S.C. 1391(c).

9. Plaintiff, Shana Albright, is an adult individual, residing in Wyncote, Pennsylvania, and belongs to the protected classes under the applicable statutes in this case. Plaintiff is a black African American by race, and female by gender.

10. Defendant, SEPTA, is a municipal agency, with its offices located at 1234 Market Street, Philadelphia, PA 19107.

11. Defendant Lt. Andrew Lacowitz, Caucasian male, (hereinafter "Lachowitz") is a citizen of the United States and upon information and belief currently resides within the Commonwealth of Pennsylvania. At all times material to the claims asserted by Plaintiff in this civil action, Lachowitz was Plaintiff's supervisor.

12. Captain Pasquarella, Caucasian male, (hereinafter "Pasquarella") is a citizen of the United States and upon information and belief currently resides within the Commonwealth of Pennsylvania. At all times material to the claims asserted by Plaintiff in this civil action, Pasquarella was Plaintiff's supervisor.

13. Capt. Roger Walls, African American male, (hereinafter "Walls") is a citizen of the United States and upon information and belief currently resides within the Commonwealth of Pennsylvania. At all times material to the claims asserted by Plaintiff in this civil action, Walls was Plaintiff's supervisor.

14. Captain William Saunders, Caucasian male, (hereinafter "Saunders") is a citizen of the United States and upon information and belief currently resides within the Commonwealth of Pennsylvania. At all times material to the claims asserted by Plaintiff in this civil action, Saunders was Plaintiff's supervisor.

15. At all times material to this action, Lachowitz, Pasquarella, Saunders and Walls are SEPTA supervisory police officers, and are being sued in their respective individual capacities.

## III. <u>BRIEF STATEMENT OF FACTS</u>

16. Plaintiff was hired by SEPTA on or about October 12, 2015, as a Transit Police Officer.

17. Over a long period of time, Defendants subjected Plaintiff to a pattern of race and/or gender discriminatory actions and harassment, and retaliation for complaining about race and gender discrimination.

18. In October of 2018 Plaintiff applied to be a detective with SEPTA Transit Police. It was overlooked and Plaintiff was never offered the position. Sergeant Patrick Barr then interviewed Plaintiff for the position a couple of weeks after PO

Davidson and PO Kradzinski, white male officers, with 6 months on the job, were selected for the detective position.

19. Plaintiff was skipped intentionally without any explanation. Plaintiff asserts that she was denied this position because of her race and gender.

20. On November 30, 2018, Plaintiff was assigned to Car 702, and her duties were to check and lock/unlock stations from Fernrock to Allegheny station. Plaintiff was not feeling well and was at her HQ using the bathroom that day. At about 1 a.m., Sergeant Marc Pasquarella requested PO Riggs and Plaintiff to report to Broad Street and Glennwood Avenue parking lot to meet with him. When they met the sergeant, he only spoke with Plaintiff's partner PO Riggs, using profanity about a personal matter that had nothing to do with Plaintiff. He never spoke with Plaintiff nor looked in her direction, yet Plaintiff was the driver of Car 702.

21. On January 23, 2019, at about 7a.m., Plaintiff was involved in an off-duty incident which had nothing to do with SEPTA. Plaintiff went to the hospital for treatment the same day. However, SEPTA's Internal Affairs interviewed several of Plaintiff 's family members and friends who were not involved in the incident and checked Plaintiff's friends' residences. Plaintiff called out sick and provided her supervisor sergeant Dominic Barone addresses she was going to stay at while she was out sick. Plaintiff had a doctor's note excusing her from work from January 23

to February 8, 2019, because she broke her pinky finger and was scheduled for surgery on February 01, 2019.

22. On January 24, 2019, Inspector James Reynolds emailed the entire Police Department an “Attempt to locate” Plaintiff, describing Plaintiff’s personal matter that arose at her residence in the email. The spread of misinformation about Plaintiff by Inspector Reynolds made Plaintiff feel very embarrassed, distressed and caused reputational harm throughout her career at SEPTA. Inspector Reynolds did not treat **Caucasian male police officers** in the same derogatory manner he treated Plaintiff. For example, Sgt. Brian Carney (Caucasian male) was missing for about a month, but no “Attempt to Locate” email was sent out by Inspector Reynolds about him

23. On January 31, 2019, Lieutenant Emilio Mirabeli issued Plaintiff a written reprimand for alleged unauthorized person in a patrol vehicle, failure to properly patrol the assigned area, failure to comply with written and oral orders, directives, rules or regulations issued by a superior officer. This was a discriminatory disciplinary action. Plaintiff received the written reprimand when the sergeants allowed officers to work in the same patrol car and Plaintiff wasn't able to lock/unlock some gates during her shift because she couldn't reach the locks on the gates because of her height. Plaintiff’s sergeant was aware of this physical disadvantage Plaintiff had of completing her duties during her tour.

24. On February 01, 2019, Plaintiff had surgery on her hand but was forced by Captain John Arnold to work the same day and forced to write a patrol log with the same hand, denying Plaintiff medical leave. Plaintiff provided a doctor's note to not sign legal documents and restrictions. Plaintiff complained to the Department that she could not use that hand at all because it was in a cast. But Capt. Arnold gave Plaintiff a direct order to use her left hand. As a result, Plaintiff suffered more pain and had another hand surgery on the same hand.

25. On February 25, 2019, Plaintiff filed an EEOC complaint against SEPTA and these supervisors for race, sex, and disability discrimination. EEOC Charge No. 530-2019-01780.

26. Plaintiff was thereafter subjected to retaliatory actions by her supervisors in SEPTA's Police Department.

27. From March 2019 to April 2019, Plaintiff applied to be a Field Training Officer (FTO). In the 4 years since being employed with SEPTA she had trained about 15 new officers as Officers in Training (OIT) and did not get paid the extra $1 an hour provided by SEPTA for this assignment.

28. Lieutenant Robert Wright stated he denied Plaintiff this compensation because Plaintiff allegedly did not have enough time on the job. However, there were white male officers (P/O Walsh, P/O Caban, P/O Lederer) that had same time on the job as Plaintiff enrolled in the FTO program class that received the

additional compensation after Plaintiff got denied the additional compensation. Plaintiff filed a grievance with the union and that group's FTO class was canceled.

29. On August 01, 2019, Captain John Arnold sent Plaintiff an email stating Plaintiff owed the department 40 hours from June 23rd to June 29th and that Plaintiff won't be paid in August for the hours Plaintiff worked.

30. On August 22, 2019, Plaintiff noticed she worked 80 hours without pay and notified the union.

31. Then on October 09, 2019, Inspector Jahlee Hatchett sent an email responding to the first grievance that labor relations and finance relied on the Employment Rights Act of 1996.

32. On November 23, 2020, Plaintiff worked light duty because of her pregnancy with restrictions.

33. Plaintiff was placed at a high risk of Covid-19 on the 19th floor - radio room as a virtual patrol officer. Plaintiff was the replacement of a virtual patrol officer who died on October 13, 2020, from Covid-19. No one was wearing PPE or following safety precautions. Plaintiff reported this issue to Sergeant Ronald Coates. A couple weeks later Plaintiff was diagnosed with Covid-19 and had to take a baby aspirin up to her labor day to keep Plaintiff from having blood clots.

34. On October 28, 2021, Plaintiff was denied permission to express her breastmilk when she was working C tour shift. Plaintiff was not allowed to leave to

pump and store her milk when she was working. Plaintiff was engorged and suffered from breast infections for not expressing breastmilk. Days later EEO provided Plaintiff with a room to express breastmilk and storage.

35. In January 2023, Plaintiff was assigned to work full duty at district 7B, 7 a.m. to 3 p.m. shift. Plaintiff was riding with PO Sarro to get lunch. However, Sergeant Andrew Lachowicz sent a text via “WhatsApp”, stating that no one should be paired in the patrol car if they are foot beat. Then he texted Plaintiff’s personal phone demanding that Plaintiff should get out of the vehicle, and she got out of the vehicle.

36. **Several officers,** (P/O Lathrop with P/O Grier, P/O Crawford with P/O Randolph, and P/O McMorrow with P/O Ziegler, all men) admitted they were always paired in the vehicle. Lachowicz continued to allow the others to pair up in the vehicle but not Plaintiff. He assigned Plaintiff to a permanent beat 713, solo patrol officer North Philadelphia to Fernrock Transportation station. Plaintiff reported to Lachowicz several times that she wanted to change her assignment due to lack of back up and it was unsafe. However, **other officers** were partnered up but Plaintiff was the only solo beat. This was retaliatory assignment.

37. There were **two new females** (P/O Williams and P/O Torrez) in the squad; Lachowicz adjusted their beats to keep them together. He showed favoritism to other officers by assigning them the car, rotating their beats and approving time

off. But Plaintiff was the only one who was kept on a permanent beat for years. Plaintiff asserts that Sgt. Lachowicz treated her differently in retaliation for opposing his discriminatory actions and filing her previous EEOC charge of discrimination.

38. On April 19, 2023, Sergeant Lachowicz asked Plaintiff to submit patrol logs for the dates of April 13 and April 14, 2023, while Plaintiff was on fire alarm job at City Hall. Plaintiff stated to him that she misplaced her phone and took notes of her activity of the day, and she can submit them later on. He stated to Plaintiff that it was ok and next time to submit logs at the end of shift. However, Plaintiff later received an Internal Affairs investigation into the same logs he told Plaintiff not to worry about.

39. On June 23, 2023, Plaintiff filed grievance and on June 30, 2023, Plaintiff was issued a written reprimand disciplinary action.

40. On October 27, 2023, the written reprimand was dismissed, and discipline was settled as a verbal counsel with the Union.

41. On July 6, 2023, Plaintiff was working in the radio room on B Tour. While Plaintiff was on a phone call with Capt. Walls telling him the bad experiences she was facing with the department and childcare issues, Capt. Walls stated, “Me giving you all this information I deserve some pussy”. Plaintiff was shocked and asked him, “what?”, he stated “I can give you good information”. Plaintiff ignored

him and proceeded to walk to the quiet area to make sure she heard him right. Then Capt. Walls asked Plaintiff for some sex. Plaintiff stated, "that's what it seems like to be tossed around to get what you want". He stated "Right".

42. Plaintiff told Walls she was tired of being overlooked, denied multiple times for detective work and finally going to be enrolled in an FTO program class. As Plaintiff was telling him she was going to find a new job that works for her because of the mistreatment and the injuries she sustained from an off-duty incident, Walls stated "So you don't want to give me none?" (referring to sex); he asked twice. Plaintiff replied, "I don't want to". Plaintiff felt uncomfortable with the unexpected sexual conversation that her captain was having with her.

43. Ever since Plaintiff rejected Capt. Walls' sexual approach, Plaintiff experienced rejections for positions Plaintiff applied for and was qualified in the department. Capt. Walls was known for trying to hook up with female officers by telling them what they want to hear and offering them leeway in the department.

44. In August 2023, Plaintiff spoke with Capt. Walls about the available viper positions (6am-2pm) and SAVE unit positions (9am-5pm, 7am-3pm). He told Plaintiff he can't help Plaintiff because he would have to accommodate other people who may ask after Plaintiff. However, no email notification for the open positions came out, they were written on his white board in the office, but he

assigned female officer Brickley-Brown that had less seniority than Plaintiff and no patrol time viper position, while he denied Plaintiff the position.

45. From September 5, 2023, to September 7, 2023, PO Darren Petty kept randomly asking Plaintiff for photos and videos of her and Plaintiff repeatedly (5 times) told him "no". He would stand very close to Plaintiff and give Plaintiff a creepy look. Plaintiff felt uncomfortable and unsafe by his actions.

46. On September 13, 2023, Plaintiff reported Officer Petty's sexual harassment to Sergeant Lachowicz, Lieutenant Devon Issac, Lieutenant Pasquarella and filed a SEPTA EEO complaint.

47. SEPTA's EEO did not reach out to Plaintiff about this internal complaint of sexual harassment until January 28, 2025, and no remedial action was taken against Officer Petty.

48. On May 24, 2024, Plaintiff was involved in a motor vehicle accident off duty. She was restricted from work for a couple days and requested to return on light duty due to her injuries. Capt. William Saunders forced Plaintiff to exhaust all her sick and vacation paid time before Plaintiff was assigned to light duty. The Union and SEPTA have an agreement that officers no longer have to use all their paid sick time, vacation or holiday time to be approved for light duty. But Plaintiff was initially denied light duty assignment and forced to use up her sick and vacation time. There was another officer (P/O Brickley-Brown) who was on light

duty for an off-duty incident, and she was approved without using her sick/vacation time. P/O Fusca (White) was on light duty for an off-duty injury and P/O Santiago (White) was also on light duty for cosmetic surgery, and neither were forced to use up their vacation time before they could be accommodated with light duty like Plaintiff. Plaintiff lost about 8 paid sick/vacation days and SEPTA violated the policy. This was another retaliatory action by SEPTA.

49. From May 31, 2024, to August 28, 2024, Capt. Saunders requested another detailed doctor's note because Plaintiff was falsely accused of writing her own doctor's notes and SEPTA was denying Plaintiff light duty accommodation. He also kept asking for Plaintiff's diagnosis and her MRI results. Plaintiff emailed all her doctor's notes to Capt. Saunders and Sergeant Lachowicz as she was ordered. Plaintiff's HIPAA rights were violated, and the department knew Plaintiff's medical condition.

50. From June 2024 to August 2024, while assigned to light duty in the radio room operating the cameras, Capt. Walls randomly walk in the room with small conversations about how OPR needed more help. Plaintiff told him she didn't mind helping. For about 3 weeks working in OPR, Plaintiff met with Capt. Walls and asked about a permanent position once she returned to full duty. He said to Plaintiff, "You have to give me a hug and kiss a day". Plaintiff immediately replied "no" and left his office. Plaintiff rejected Walls' sexual request and was

uncomfortable with Walls. Plaintiff spoke with PO Newton about the inappropriate comment the Captain made to her.

51. From July 20, 2024, to July 23, 2024, Plaintiff started the orientation and training for the Sergeant promotion. Plaintiff was told by Inspector James Zuggi that she could not take the promotion while on light duty. So, Plaintiff had accepted the sergeant position under the impression that she was going to be sergeant of radio room B-tour or district 7 B tour. The Deputy Chief had said during training "I DON'T CARE WHAT SHIFT YOU WORK, WHAT DAYS OFF YOU HAVE AS LONG ITS COVERED, I AM GIVING THE LIEUTANTS THE OPPORTUNITY TO RUN THEIR DISTRICT AS THEY WANT. IT'S FLEXIBLE, YOU CAN WORK B TOUR ONE WEEK AND THEN C TOUR THE NEXT WEEK. THIS COORDINATE THAT WITH YOUR LIEUTENANT".

52. Throughout the training dates the command staff expressed the position was flexible and scheduling would not be an issue. Plaintiff was made to understand that her supervisor training would be in the radio room for eight weeks. Chief Lawson also made a similar comment to Plaintiff at the customer service luncheon when Plaintiff received an award for excellence. Capt. Saunders also told Plaintiff directly that Plaintiff would be the sergeant of the radio room. But she later received an email telling her that she was assigned to District 7C with Thursday and Friday as her RDOs. This caused Plaintiff a lot of hardship because now

worked the 3:00 p.m. to 11:00 p.m. shift and had to find childcare for her toddler as a single mother from 2:00 p.m. to 12 midnight. **Plaintiff was misled by the Command staff and the department failed her**. The command staff knew Plaintiff's struggle of childcare being a single parent. The Chief encouraged Plaintiff to retake the test on May 7, 2024, because he was going to grant leeway for people's families because no one wanted to take the exam. Plaintiff was let down by SEPTA's Command Staff and her life changed for the worse.

53. On January 15, 2025, Lieutenant Lachowicz notified everyone in district 7 and other officers in the department by text, talking about Plaintiff's confidential Internal Affairs investigation. This was a retaliatory disparaging statement about Plaintiff circulated by Lachowicz among Plaintiff's colleagues, which caused the officers to turn against Plaintiff and bad rumors spread about Plaintiff throughout the department. The officers did not feel comfortable working with Plaintiff. Lachowicz's message said, "Today, Sergeant Albright was issued a letter of intent to dismiss from SEPTA. She turned in her police equipment and is being held off pending termination due to an Internal Affairs investigation. She does not have access to our headquarters anymore and will only be permitted in the headquarters with supervisor present. Sergeant Riggs will be solo running your squad. I am committed to helping as much as possible and ensure you that Sergeant Lafferty

and Sergeant McKenna are here to assist. If anyone has questions feel free to text or call me".

54. However, on November 6, 2024, when Lachowicz's friend PO Brian Zenser (Caucasian) was arrested for child pornography, Lachowicz sent a brief message to the sergeants in district 7 about Brian Zenser's Internal affairs investigation without any detail like he did to Plaintiff and no one could discuss it. His message stated "So that everyone is on the same page. Brian Zenszer was arrested by the FBI today. It is unclear as to why and people obviously speculate when they don't know answers. As supervisors, we are not offering up this information, but if officers ask if it is true then of course, we will answer yes and not elaborate on anything. If the officers try to talk about it at length it is not up for discussion in that forum. I am sure the media will have it in no time."

55. On January 15, 2025, Plaintiff arrived at work, district 7 headquarters at about 2:30 p.m. Lieutenant Lachowicz and Captain Pasquarella served Plaintiff a notice of charges/reason for imminent discharge memo stating that Plaintiff was held off without pay effective immediately, pending imminent discharge. They did not help Plaintiff and did not let her family member that came to help Plaintiff through the gate to get Plaintiff's belongings. Plaintiff had to put her bags on the dirty ground and push them through the rotary gates to the other side. They also

embarrassed Plaintiff in front of other officers by walking Plaintiff off the premises and out of the station.

56. They made Plaintiff clean and clear her lockers and desk out, took her work ID, medical cards, MPO card, firearm, work equipment, transit police ID card etc. They treated Plaintiff as if she were fired but Plaintiff was only suspended without pay until the investigation was over. The captain did not let Plaintiff retrieve her debit card that she left in her vest. He told Plaintiff she had to wait until the investigation was over to check for her debit card.

57. Sometime at about the end of 2024, Sergeant David Anderson (Caucasian male) was accused of domestic violence which caused him to be incarcerated for 3 days. He was held off administratively **with pay**. But Plaintiff was treated unfairly and differently for her alleged infraction when she was held off without pay.

58. On January 28, 2025, SEPTA's EEO sent Plaintiff a letter about the outcome of their so-called investigation of Plaintiff's complaint of sexual harassment against Officer Petty, who had since been promoted to Sergeant, stating that Officer Petty's conduct was not sexual harassment. That made Plaintiff even more upset that SEPTA was condoning the unwelcome sexual conduct of this officer towards Plaintiff.

59. On February 3, 2025, Plaintiff was diagnosed with depression and anxiety. Plaintiff started seeking therapy once a week with thriveworks and SEPTA's EAP

once a month. Plaintiff stopped seeking SEPTA's EAP for lack of professionalism and felt it was not confidential.

60. On February 6, 2025, Plaintiff had a demotion hearing with Captain Eltor Sumpter. His findings of Plaintiff's IA case were for Plaintiff to be demoted from sergeant to officer, time served (16 days suspension), pay decreased, relocated to another district, RDO changed, loss of seniority and automatic final. Plaintiff did not agree with his determination, so she filed an appeal. SEPTA violated their own SAM policy by forcing Plaintiff to sign and agree to the letter of determination that Plaintiff did not agree with. But the policy provided Plaintiff with the right to appeal. The retaliatory discipline and demotion were overkill and illegal according to SEPTA's policy.

61. Lieutenant Lachowicz conducted his own investigation on Plaintiff within 7 weeks of Plaintiff being a sergeant as if he had a witch hunt and Plaintiff was the target.

62. On March 4, 2025, the Union filed Plaintiff's first grievance request for her seniority. Inspector Pasquarella denied it on March 11, 2025.

63. On March 28, 2025, the Union filed Plaintiff's second grievance hearing with labor relations manager Chuck Whitney, and it was denied the same day.

64. On March 17, 2025, Plaintiff submitted a hardship accommodation request for her shift to be changed from C Tour (3pm-11pm) to B Tour (7am-3pm) until

the annual shift picking. Plaintiff sent an email to her sergeants, Shakeena Watkins, David Anderson and Lieutenant Tone Wilson. Inspector Rodger Walls denied Plaintiff's accommodation request stating "Being a single parent and facing childcare challenges due to being assigned to C tour, is not a hardship. Obtaining adequate childcare in accordance with her shift is incumbent upon her to research and obtain on her own time."

65. That was part of the ongoing sexual harassment and retaliation by Inspector Walls because Plaintiff turned down his inappropriate sexual requests and harassment.

66. But on September 20, 2025, a new officer with less time than Plaintiff requested hardship accommodation for the same thing and she was approved for her shift to be changed from C tour to B tour.

67. On April 8, 2025, Plaintiff went out on FMLA, sick without pay for stress.

68. Plaintiff's FMLA was exhausted June 23, 2025. Plaintiff continued to stay out of work on unpaid sick leave. Plaintiff was having mental breakdowns, nightmares, deep depression episodes, loneliness, and anxiety when she heard of certain supervisors' names. All the rumors and lies that were spreading in the department ruined Plaintiff's reputation and character.

69. On April 8, 2025, Plaintiff filed another EEOC charge of discrimination and retaliation against SEPTA. EEOC Charge No. 530-2025-02336.

70. On June 5th, 10th, and July 01, 2025, Lieutenant Lachowicz gave Plaintiff a direct order to complete her CLEAN certification while Plaintiff was out sick unpaid.

71. This was a violation of SEPTA's sick leave policy for a supervisor to instruct a subordinate to perform SEPTA's business while on sick leave.

72. Plaintiff completed the form but did not get paid for the time she spent doing SEPTA's work when she was out sick.

73. On July 22, 2025, Plaintiff filed an internal EEO complaint with SEPTA EEO about the police department assigning PO Darren Petty as Plaintiff's sergeant. Sgt. Perry was the officer Plaintiff had filed a complaint of sexual harassment against, but SEPTA took no remedial or disciplinary action against.

74. Plaintiff's supervisors assigning Plaintiff to work under Sgt. Petty was retaliatory knowing Plaintiff had previously complained about Petty's sexual harassment.

75. On July 24, 2025, an email was exchanged between Capt. Pasquerella and Captain Saunders about Plaintiff's outside employment.

76. On July 25, 2025, Plaintiff spoke to SEPTA's EEO and requested to be moved to district 7 B tour or a tour that Sgt. Petty did not work. They informed Plaintiff that when she returns to work from sick leave, they will reassign her.

77. On August 6, 2025, Plaintiff was told an “anonymous” tip was given to SEPTA IG office about Plaintiff on sick leave and working for Aramark at the Lincoln financial field.

78. On September 9, 2025, Lieutenant Valdez Trowser directed Plaintiff to comply with his order to respond to his emails and attend an internal affairs investigation while Plaintiff was out on unpaid sick leave. This was a violation of SEPTA’s sick leave policy.

79. Then on September 13, 2025, the Lieutenant conducted internal affairs interview that Plaintiff was forced to attend while on unpaid sick leave.

80. Plaintiff did not get paid for her travel or attendance for the interview by SEPTA. This had never happened **to other officers that were forced** to conduct administrative business while out on sick leave. It was also a violation of SEPTA’s policy.

81. On September 25, 2025, Plaintiff requested ADA accommodation to be on light duty because of her disabilities.

82. But SEPTA violated its ADA Reasonable accommodation process by not granting Plaintiff the 30-day provisional accommodation. Plaintiff had to burn 8 paid vacation days, 2 paid personal, and 33 unpaid sick time to wait on her request. (9/25/2025 to 11/17/2025 = 43 days total). This was also a retaliatory

action by SEPTA because of her prior protected activities under Title VII and the ADA.

83. On September 30, 2025, at 1:11 p.m. Plaintiff was subjected to retaliatory termination for working 8 days of her approved outside employment while on unpaid sick leave. Defendants used an automatic final from when Plaintiff was a sergeant and added progressive charges to Plaintiff's case.

84. Captain Pasquarella convinced the PBI board that Plaintiff had a "special final and can be terminated for anything. Plaintiff Immediately grieved the termination.

85. On October 1, 2025, at 3:39 pm, the termination was overturned during a first level grievance hearing and reduced to 5-day suspension and final warning because Pasquarella knew the termination was improper in the first place. Then at 3:43 p.m. the same day Capt. Pasquarella emailed Plaintiff another Employee Process Notice for alleged failure to report sick leave, initiating another disciplinary action against Plaintiff. Defendants added two automatic discipline charges knowing Plaintiff had a previous automatic final.

86. On October 7, 2025, Plaintiff was terminated again by Captain Saunders, for alleged failure to report out sick for the same alleged conduct of the first termination. Defendants started inquiring about Plaintiff's sickness back on June

10, 2025, and emails were communicating between all captains and inspectors about Plaintiff.

87. On October 21, 2025, during step 2 of the Union's grievance, the termination was overturned and Plaintiff was reinstated.

88. Plaintiff was subjected to two retaliatory terminations and retaliatory harassment by Defendants within twenty-one days.

89. On October 22, 2025, Plaintiff sent a memo to Capt. Saunders to notify the department about her outside employment she obtained while she was fired. They ignored Plaintiff's request and did not consider approving the outside employment.

90. On October 28, 2025, Plaintiff was reinstated as a police officer. On November 14, 2025, SEPTA's EEO director Carol O'Neal contacted Plaintiff with her new light duty position. Plaintiff was reassigned to A Tour, 10 p.m. to 6 a.m., with Tuesday and Wednesday off. O'Neal stated that was all the department had to offer. The Union argued it was false and others had been accommodated for light duty and shift with no change in days off.

91. On November 28, 2025, the Union notified SEPTA's Labor Relations that Plaintiff will resume her outside employment.

92. In May 2026, SEPTA's Police Department initiated another investigation of Plaintiff's outside employment, and the Union objected and cited lack of predicate violation, lack of jurisdiction and procedural defects.

93. On July 13, 2026, SEPTA's EEO abruptly terminated Plaintiff's disability accommodation of her assignment to the radio room, without any interactive process, no essential function analysis, no undue hardship analysis, no provisional accommodation. This was retaliatory action by SEPTA.

94. On July 14, 2026, the Union served SEPTA with objection to the abrupt termination of Plaintiff's ADA accommodation, however, SEPTA failed to timely respond to the Union's objection. Plaintiff was subjected to disability discrimination and retaliation by SEPTA.

95. Plaintiff asserts that she has been subjected to racial and gender discriminatory actions, sexual harassment and hostile work environment, failure to accommodate Plaintiff's disabilities and continuous retaliatory harassment and other retaliatory actions by Defendants in violation of Title VII, ADA and the PHRA because Plaintiff had engaged in protected activities under Title VII, ADA and the PHRA.

## IV STATEMENT OF CLAIM

### COUNT ONE–PHRA VIOLATION-RACE, GENDER AND DISABILITY DISCRIMINATION
### PLAINTIFF V. ALL DEFENDANTS

96. Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 95 above as if same were fully set forth at length herein.

97. The acts and conduct of Defendants as stated above where Plaintiff was subjected to racially and sex motivated discrimination, harassment and hostile work environment, and failure to accommodate her disability were violations of the PHRA.

98. Defendants Lachowicz, Walls, Sauders and Pasquarella as stated above aided and abetted in the racially and gender motivated discrimination, harassment and hostile work environment of the Plaintiff, and failure to accommodate Plaintiff's disabilities.

99. As a direct and proximate result of the said discriminatory practices of Defendants in violation of the PHRA, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, as well as mental anguish, emotional distress, humiliation, and damage to reputation.

**COUNT TWO – PHRA VIOLATIONS – RETALIATION**
**PLAINTIFF V. DEFENDANTS**

100. Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 99 above as if the same were fully set forth at length herein.

101. The acts and conduct of Defendants as stated above, where Plaintiff was subjected to adverse actions, including, but not limited to, termination of employment, disciplinary suspension, disciplinary write ups, retaliatory harassment

and hostile work environment after Plaintiff engaged in protect activities were violations of the PHRA.

102. Defendants Lachowitz, Pasquarella, Saunders and Walls aided and abetted the retaliatory actions taken against Plaintiff by SEPTA.

103. As a direct and proximate result of the said retaliatory practices of Defendants, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, and interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

**COUNT THREE –TITLE VII VIOLATION**
**RACE AND GENDER DISCRIMINATION**
**PLAINTIFF V. SEPTA**

104. Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 103 above as if same were fully set forth at length herein.

105. The acts and conduct of Defendant SEPTA through its supervisors, managers, lieutenants, captains, inspectors and deputy Chief in its Police Department, as stated above where Plaintiff was subjected to racially and gender motivated adverse actions, discrimination, harassment and hostile work environment were violations of Title VII.

106. As a direct and proximate result of the said discriminatory practices of Defendant SEPTA in violation of Title VII, Plaintiff has sustained loss of wages

and earnings, loss of benefits, loss of future earning power, loss of back pay, as well as mental anguish, emotional distress, humiliation, and damage to reputation.

**COUNT FOUR – TITLE VII VIOLATIONS – RETALIATION**
**PLAINTIFF V. SEPTA**

107. Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 106 above as if the same were fully set forth at length herein.

108. The acts and conduct of SEPTA through its managers, supervisors and supervisory employees, as stated above where Plaintiff was subjected to adverse actions, including but not limited to terminations, suspensions, disciplinary write ups, retaliatory investigations, harassment and hostile work environment after Plaintiff engaged in protect activities were violations of Title VII.

109. As a direct and proximate result of the said retaliatory practices of SEPTA, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of future earning power, loss of back pay, front pay, and interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

**COUNT FIVE –ADA VIOLATION DISABILITY DISCRIMINATION**
**PLAINTIFF v. DEFENDANTS**

110. Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 109 above as if same were fully set forth at length herein.

111. The acts and conduct of the individual Defendants and SEPTA through its supervisors, managers, lieutenants, captains, inspectors in its Police Department and in SEPTA's EEO department, as stated above where Plaintiff was subjected to denial of accommodation for her disabilities were violations of the ADA.

112. As a direct and proximate result of the said discriminatory practices of Defendants in violation of ADA, Plaintiff has sustained loss of wages and earnings, loss of benefits, loss of back pay, as well as mental anguish, emotional distress, humiliation, and damage to reputation.

**COUNT SIX – ADA VIOLATIONS – RETALIATION**
**PLAINTIFF V. DEFENDANTS**

113. Plaintiff incorporates by reference all allegations alleged in paragraphs 1 through 112 above as if the same were fully set forth at length herein.

114. The acts and conduct of the individual Defendants and SEPTA through its managers, supervisors and employees, as stated above where Plaintiff was subjected to adverse actions, after Plaintiff engaged in protected activities, were violations of the ADA.

115. As a direct and proximate result of the said retaliatory practices of Defendants, Plaintiff has sustained loss of wages and earnings, loss of benefits, , loss of back pay, front pay, and interest due therein as well as mental anguish, emotional distress, humiliation, and damages to reputation.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully demands judgment against Defendants and requests that this Honorable Court:

A. Enter judgment against Defendants for back pay, front pay, loss of income, loss of benefits, pre and post judgment interests, costs of suit, compensatory damages, punitive damages against the individual Defendants Lt. Lachowitz, Capt. Pasquarella, Capt. Saunders and Capt. Walls, attorneys' fees and expert witness fees as permitted by law; and

B. Award such other equitable relief, as the Court may deem necessary and just, including but not limited to an Order to make whole.

**JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all questions of fact raised by this Amended Complaint.

Olugbenga O. Abiona, Esquire
Attorney ID # 57026
121 South Broad Street, Suite 1200
Philadelphia, PA 19107
(215) 625-0330
Attorney for Plaintiff

Dated: August 21, 2026

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

801 Market Street, Suite 1000
Philadelphia, PA 19107-3126
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Philadelphia Direct Dial: (267) 589-9700
FAX (215) 440-2606, 2632, 2822 & 2604
Website: www.eeoc.gov

July 22, 2026

Ms. Shana Albright
7812 Washington Lane
Wyncote, PA 19095

Re: Shana Albright v. South Eastern Pennsylvania Transportation Authority (SEPTA)
EEOC Charge Number: 530-2026-04567

Dear Ms. Albright,

The Commission has completed the investigation of the above referenced charge.

In your EEOC charge, you allege you were subjected to discrimination based on your sex (female), race (Black or African American), and retaliated against when you were subjected to demotion, discriminatory terms and conditions of employment, sexual harassment, discipline, and discharge.

Based on our review and analysis of the information obtained, the EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes.

The EEOC has completed the administrative processing of your charge and is issuing you a Determination and Notice of Rights, which will allow you to pursue your claims further by filing a private lawsuit within ninety (90) days of receipt of the Notice.

Sincerely,

Sean Gallagher
Federal Investigator

cc: Olugbenga O. Abiona

Attorney at Law